UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

PATRICK DEWAYNE WILSON,

        Plaintiff,                        Case No. 1:22-cv-359

v.                                      Hon. Hala Y. Jarbou

LORI BLUE,

        Defendant.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's claims under the Americans with Disabilities Act and Rehabilitation Act with prejudice for failure to state a claim. The Court will dismiss Plaintiff's state law tort claims without prejudice because the Court declines to exercise supplemental jurisdiction over them. Plaintiff's claim for violation of his Eighth Amendment rights remains in the case. Further, the Court will deny Plaintiff's motion to serve the complaint (ECF No. 8) as premature.

**Discussion**

I.      **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Nurse Lori Blue.

Plaintiff alleges that he has a long history of heart problems. On December 14, 2021, after receiving a COVID-19 vaccine booster, he began to experience severe chest pains. He visited healthcare that afternoon. Defendant Blue, after being notified of Plaintiff's condition, forced Plaintiff to wait while she called other inmates to address non-emergency issues. After Plaintiff reiterated his complaint of severe chest pain, Defendant Blue stated "there's nothing wrong with Mr. Wilson, he does this all the time. There's no emergency." (Compl., ECF No. 1, PageID.5.) So, Plaintiff returned to his cell.

At 6:45 p.m. Plaintiff was again taken to healthcare. He was seen by Nurse Schultz. She contacted the medical provider who advised that Plaintiff might have had, or might be having, a stroke. Plaintiff was taken to a hospital.

Plaintiff does not indicate whether, in fact, he was suffering or had suffered a stroke. He does not indicate whether he received any other treatment for any health condition as a result of his trip to the hospital. In fact, Plaintiff does not indicate that he suffered any negative health consequence by virtue of the delay in treatment caused by Defendant Blue's prioritization of other patients over Plaintiff.

Plaintiff contends that Defendant Blue's failure to examine or treat him constitutes deliberate indifference to Plaintiff's serious medical need in violation of the Eighth Amendment. Plaintiff also claims that Defendant Blue's actions violated his rights under the Americans with Disabilities Act and the Rehabilitation Act in that Defendant Blue discriminatorily excluded

Plaintiff from receiving medical treatment because of his disability. Plaintiff also asserts that Defendant Blue's actions were grossly negligent and constitute an intentional infliction of emotional distress in violation of state law. Plaintiff also suggests that Defendant Blue, by causing Plaintiff mental and emotional distress, violated federal law.

Plaintiff seeks a declaration that Defendant Blue violated his rights, and compensatory damages in the amount of $10,000.00 and punitive damages totaling $100,000.00.

## II.     Plaintiff's Motion to Serve the Complaint

Plaintiff has filed a motion to serve the complaint. (ECF No. 8.) Until Prisoner Early Mediation is completed, Plaintiff's motion to serve the complaint is premature. Therefore, at this time, Plaintiff's motion to serve the complaint (ECF No. 8) will be denied.

## III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Eighth Amendment

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

This is not a case where Plaintiff's underlying medical condition was minor or non-obvious; but it is a case where he alleges he was not provided adequate treatment because that

5

treatment was delayed for a few hours. Under that circumstance, Plaintiff is required to place verifying medical evidence in the record to show the detrimental effect of the delay. Plaintiff does not allege that there was a detrimental effect of the delay that might be reflected in any medical evidence. The only harm he alleges as a result of the delay was not physical harm, it was mental and emotional injury. Thus, Plaintiff's allegations may fall short on the objective element. For purposes of this preliminary review, however, the Court will presume that Plaintiff continued to suffer pain during the delay and that such pain is sufficient to satisfy the requirement for a detrimental effect of the delay.

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)). Plaintiff's report that Defendant Blue stated "there's nothing wrong with Mr. Wilson, he does this all the time. There's no emergency," (Compl., ECF No. 1, PageID.5), supports an inference that she had a sufficiently culpable state of mind.

6

Accordingly, Plaintiff's allegations that Defendant Blue denied him treatment for his severe chest pain suffice to state a claim for deliberate indifference to Plaintiff's serious medical need in violation of the Eighth Amendment.

### B. Federal Claim for Mental or Emotional Injury

Plaintiff does not identify the basis for his federal claim for mental or emotional injury. There is certainly no federal common law tort for the intentional infliction of such injuries; nonetheless, 42 U.S.C. § 1997e(e) indicates that a prisoner confined in a correctional facility may bring a civil action for mental or emotional injury suffered while in custody where he makes a prior showing of physical injury. Plaintiff's allegations are, at best, scant with regard to any physical injury. Therefore, his claim for mental or emotional injury may not be remediable under 42 U.S.C. § 1983. Nonetheless, for purposes of this preliminary review, the Court will presume that Plaintiff continued to experience pain after he returned to his cell. That physical pain is sufficient to support a claim for associated mental or emotional injury.

### C. Americans with Disability Act and Rehabilitation Act

Plaintiff claims that Nurse Blue denied him medical treatment in violation of the Americans with Disabilities Act (ADA)—presumably Title II of the ADA, 42 U.S.C. §§ 12131—and the Rehabilitation Act of 1973 (RA)—presumably § 504 of the RA, 29 U.S.C. § 794(a). Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481–82 (6th Cir. 2010) (citing 42 U.S.C. § 12132).[1] In order to state a claim under Title II of the ADA, Plaintiff

---

[1] Similarly, § 504 of the RA provides in pertinent part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be

must show: (1) that he is a qualified individual with a disability; (2) that defendants are subject to the ADA; and (3) that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disability. *See Tucker v. Tennessee*, 539 F.3d 526, 532–33 (6th Cir. 2008); *see also Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003). The term "qualified individual with a disability" includes "an individual with a disability who, with or without . . . the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs). The proper defendant under a Title II claim is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002). Plaintiff has named Nurse Blue as a defendant in her individual and official capacities.

Plaintiff alleges that Defendant Blue violated the ADA and RA "by her discriminatory act of excluding Plaintiff from receiving the benefits of medical treatment, based on his disability . . . ." (Compl., ECF No. 1, PageID.7.) But Plaintiff's factual allegations suggest that Nurse Blue denied Plaintiff treatment ***despite*** Plaintiff's alleged disability, not ***because*** of it. As

---

      excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). "Because the ADA sets forth the same remedies, procedures, and rights as the Rehabilitation Act . . . claims brought under both statutes may be analyzed together." *Thompson v. Williamson Cnty.*, 219 F.3d 555, 557, n.3 (6th Cir. 2000) (citing *Maddox v. University of Tenn.*, 62 F.3d 843, 846, n. 2 (6th Cir. 1995)).

8

the Second Circuit Court of Appeals has explained, "Where the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say . . . that a particular decision was 'discriminatory.'" *United States v. University Hospital*, 729 F.2d 144, 157 (2d Cir. 1984). Indeed, that distinction explains why the ADA (and the RA) are not the appropriate federal causes of action to challenge the sufficiency of medical treatments. *See, e.g.*, *Baldridge-El v. Gundy*, No. 99-2387, 2000 WL 1721014, at *2 (6th Cir. Nov. 8, 2000) ("[N]either the RA nor the ADA provide a cause of action for medical malpractice."); *Centaurs v. Haslam*, No. 14-5348, 2014 WL 12972238, at *1 (6th Cir. Oct. 2, 2014) ("Although [Plaintiff] may have a viable civil rights claim under 42 U.S.C. § 1983 for inadequate medical care, he has failed to state a prima facie case under the parameters of the ADA."); *Powell v. Columbus Medical Enterprises, LLC*, No. 21-3351, 2021 WL 8053886, at *2 (6th Cir. Dec. 13, 2021) ("This dissatisfaction necessarily sounds in medical malpractice, which, 'by itself, does not state a claim under the ADA.'").[2] Accordingly, the Court concludes that Plaintiff has failed to state a claim against Nurse Blue for violation of the ADA or the RA.

---

[2] S*ee also Iseley v. Beard*, 200 F. App'x 137, 142 (3d Cir. 2006) ("Iseley . . . claims that he was denied medical treatment for his disabilities, which is not encompassed by the ADA's prohibitions."); *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012) ("The ADA is not violated by 'a prison's simply failing to attend to the medical needs of its disabled prisoners.'"); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he [ADA] would not be violated by a prison's simply failing to attend to the medial needs of its disabled prisoners."); *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) ("[A] lawsuit under the Rehab Act or the Americans with Disabilities Act (ADA) cannot be based on medical treatment decisions."); *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134, 1144 (10th Cir. 2005) ("[I]t is well settled that the ADA [and the RA do] not provide a private right of action for substandard medical treatment." (internal quotation marks omitted)); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1294 (11th Cir. 2005) ("The Rehabilitation Act, like the ADA, was never intended to apply to decisions involving . . . medical treatment.").

### D. State Law Claims

Plaintiff alleges that Nurse Blue ignored his complaints regarding severe chest pains, declared that Plaintiff's circumstance was not emergent, and examined other non-emergent cases ahead of Plaintiff such that Plaintiff eventually left. Plaintiff characterizes Nurse Blue's actions as grossly negligent and as an intentional infliction of emotional distress. But, "Michigan law provides that the substance—not the label—of an allegation determines whether a plaintiff raises a medical-malpractice or a negligence claim." *Albright v. Christensen*, 24 F.4th 1039, 1043 (6th Cir. 2022). "[A] court must ask two fundamental questions in determining whether a claim sounds in ordinary negligence or medical malpractice: (1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises question of medical judgment beyond the realm of common knowledge and experience." *Id*. at 1043–44 (internal quotation marks omitted) (quoting *Bryant v. Oakpointe Villa Nursing Ctr*., 684 N.W.2d 864, 871 (Mich. 2004). The Court concludes that Plaintiff's claims occur within the course of a professional relationship and that they raise questions of medical judgment that go beyond common knowledge and experience.[3]

Whether or not such claims are properly classified as medical malpractice claims is of particular significance because this Court has concluded that particular state law medical malpractice requirements apply to medical malpractice claims when they are appended to federal claims. *See Jones v. Corr. Med. Servs., Inc.*, 845 F. Supp. 2d 824 (W.D. Mich. 2012); *Flint v.*

---

[3] The answers to the "fundamental questions" remain the same whether the Court considers Plaintiff's claim for gross negligence or his claim for intentional infliction of emotional distress. The Michigan courts have concluded both types of claim may properly be considered as medical malpractice claims. *See, e.g.*, *Steele v. St. Lawrence Hosp. and Healthcare Servs.*, No. 283899, 2009 WL 1027208, at *2–5 (Mich. Ct. App., Apr. 16, 2009) (intentional infliction of emotional distress and gross negligence); *Lucas v. Awaad*, 830 N.W.2d 141, 150–52 (Mich. Ct. App. 2013) (intentional infliction of emotional distress).

10

*Eicher*, No. 2:21-cv-35, 2022 WL 202922 (W.D. Mich. Jan. 24, 2022). The specific requirement at issue in *Jones* and *Flint* was the "affidavit of merit" requirement:

> First, we apply this framework to Michigan's "affidavit of merit" requirement. This statute requires that "the plaintiff's attorney shall file with the complaint an affidavit of merit signed by a health professional who the plaintiff's attorney reasonably believes meets the requirements for an expert witness." Mich. Comp. L. § 600.2912d(1). The health professional must describe the appropriate standard of care and provide her opinion regarding the defendant's failure to meet that standard. *Id*. Michigan originally enacted this provision in the 1980s as part of a larger set of tort reforms. *Ligons v. Crittenton Hosp*., 490 Mich. 61, 803 N.W.2d 271, 277 (2011). The immediate purpose of the affidavit-of-merit requirement was "to deter frivolous medical malpractice claims by verifying through the opinion of a qualified health professional that the claims are valid." *Barnett v. Hidalgo*, 478 Mich. 151, 732 N.W.2d 472, 479 (2007) (citing *Scarsella v. Pollak*, 461 Mich. 547, 607 N.W.2d 711, 714 (2000)).

*Jones*, 845 F. Supp. 2d at 853. Jones and Flint both failed to satisfy the requirement, resulting in dismissal of the medical-malpractice-like tort claims. Plaintiff here has, likewise, failed to comply with the requirement.

But Plaintiff's failure to comply with the "affidavit of merit" requirement is no longer fatal to his medical-malpractice-like tort claims. Just one week after this Court issued the decision in *Flint*, the Sixth Circuit determined that the state law medical malpractice requirements do not apply in federal diversity jurisdiction cases. *Albright*, 24 F.4th at 1040 ("Pursuant to *Hanna*, we hold that Michigan's affidavit-of-merit and presuit-notice requirements in diversity cases do not apply in the federal courts."). Although jurisdiction in Plaintiff's case does not depend on diversity of citizenship, "[a] federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction." *Super Sulky, Inc. v. Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999).[4] Therefore,

---

[4] The Sixth Circuit has also concluded the same result would follow in a Federal Tort Claims Act case. *Gallivan v. United States*, 943 F.3d 291 (6th Cir. 2019).

11

the Court concludes that Plaintiff's state law tort claims cannot be dismissed for failure to comply with the "affidavit of merit" requirement. But that does not end the Court's analysis.

Although the determination regarding the binding character of state law is the same in diversity and supplemental jurisdiction cases, there are significant differences between the two grounds for jurisdiction. Of critical importance here, the Court's exercise of supplemental jurisdiction is discretionary. *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("With respect to supplemental jurisdiction in particular, a federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise."). Section 1367(c) of Title 28, United States Code, specifies several circumstances where the Court might choose to decline to exercise jurisdiction: "if (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). The Supreme Court explained proper application of the statute as follows:

> Depending on a host of factors, then—including the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims—district courts may decline to exercise jurisdiction over supplemental state law claims. The statute thereby reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *Cohill*, *supra*, at 350, 108 S.Ct., at 619.

*City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 173 (1997).

"Judicial comity is '[t]he principle in accordance with which the courts of one state or jurisdiction will give effect to the laws and judicial decision of another, not as a matter of obligation, but out of deference and respect.'" *Hamama v. Adducci*, No. 17-cv-11910, 2018 WL

4697086, at *4 n.2 (E.D. Mich. Sept. 27, 2018); *see also Lyons v. Stovall*, 188 F.3d 327, 334 (6th Cir. 1999) (relying on the same definition). If this Court was to exercise jurisdiction over Plaintiff's state-law claims—and in the process necessarily permit claims to go forward that would be dismissed out of hand in the state courts—it would conflict with Michigan's intent to deter frivolous medical malpractice claims[5] and, thus, impair the principles of federal-state comity.

The Court concludes that the deference and respect that principles of comity require, considered in light of Michigan's policy choices for medical malpractice claims, present an exceptional circumstance that provides a compelling reason to decline jurisdiction over Plaintiff's state law claims. Accordingly, the Court will dismiss Plaintiff's state law claims without prejudice.

## **Conclusion**

Plaintiff's motion to serve the complaint (ECF No. 8) will be denied as premature. Further, having conducted the review required by the Prison Litigation Reform Act, the Court will dismiss, for failure to state a claim, Plaintiff's Americans with Disabilities Act and Rehabilitation Act claims. The Court will also dismiss without prejudice Plaintiff's state law claims based on principles of comity. Plaintiff's Eighth Amendment claim remains in the case.

An order consistent with this opinion will be entered.

Dated: August 10, 2022            /s/ Hala Y. Jarbou
                                  HALA Y. JARBOU
                                  CHIEF UNITED STATES DISTRICT JUDGE

---

[5] *See Jones*, 845 F. Supp. 2d at 853 ("The immediate purpose of the affidavit-of-merit requirement was 'to deter frivolous medical malpractice claims by verifying through the opinion of a qualified health professional that the claims are valid.' *Barnett v. Hidalgo*, 478 Mich. 151, 732 N.W.2d 472, 479 (2007) (citing *Scarsella v. Pollak*, 461 Mich. 547, 607 N.W.2d 711, 714 (2000)).").

13