UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK WILSON,

    Plaintiff,

v.

    Case No. 1:22-cv-359

LORI BLUE,

    Hon. Hala Y. Jarbou

    Defendant.
_____/

## OPINION

Patrick Wilson, a state prisoner, brings this civil action against Lori Blue, a nurse working for the Michigan Department of Corrections (MDOC). Wilson's only remaining federal claim is an Eighth Amendment violation for denial of medical care brought under 42 U.S.C. § 1983.

On October 19, 2023, Magistrate Judge Phillip Green issued a Report and Recommendation (R&R) recommending that the Court grant Blue's motion for summary judgment (ECF No. 49), decline to exercise supplemental jurisdiction over Wilson's remaining state law claims, and dismiss the case. (ECF No. 56.) Before the Court are Wilson's objections to the R&R (ECF No. 57). For the reasons discussed herein, the Court will adopt the magistrate judge's recommendations in full, subject to some supplemental analysis.

### I. STANDARD

Under Rule 72 of the Federal Rules of Civil Procedure,

> the district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3).

Proper objections require specificity. "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). Vague, conclusory objections are insufficient, as are mere restatements of a plaintiff's complaints. *See id.* Because Wilson is proceeding pro se, this Court will construe his objections more liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. BACKGROUND

On the morning of December 14, 2021, Wilson received a COVID-19 booster shot. He displayed no adverse reaction during a short monitoring period and returned to his housing unit. Shortly thereafter, Wilson began experiencing severe chest pains and shortness of breath. Four hours after these symptoms began, Wilson received permission to return to healthcare.

Wilson alleges that when he informed Blue of his symptoms, she stated, "[T]here's nothing wrong with Mr. Wilson, he does this all the time. There's no emergency . . . he'll have to wait, just like the other prisoners." (Am. Compl. ¶¶ 25-26; Kennedy Aff. ¶ 5, ECF No. 28-1.) After first tending to some scheduled patients, Blue then called for Wilson. But Wilson was no longer there; he had left after waiting for about thirty-five minutes. (Blue Aff. ¶ 7, ECF No. 50-5; Langston Clinical Encounter, ECF No. 50-7; Wilson Dep. 47, ECF No. 50-2.)

A few hours later, Wilson again returned to MDOC healthcare. This time, he was taken to Henry Ford Hospital for further evaluation. Hospital personnel examined Wilson, acknowledging his report of stroke-like symptoms but noting that his stated symptoms were inconsistent with the medical examinations performed. The examining physician, Dr. Joshua Liroff, also noted "a high suspicion for malingering[.]" (Henry Ford Report, ECF No. 50-7, PageID.305.) Wilson was ultimately discharged with a final diagnosis of "stroke-like symptom[s]" and "left-sided weakness" and a final report noting "patient's workup is unremarkable[.]" (*Id.*, PageID.306-307.)

2

Wilson initially brought claims against Blue under the Rehabilitation Act (RA), 29 U.S.C. § 701 *et seq*, and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq*, in addition to his Eighth Amendment and state law claims.  In a previous opinion, this Court dismissed for failure to state a claim Wilson's RA and ADA claims.  (8/10/2022 Op. 9, ECF No. 10.)  It further dismissed Wilson's state law claims without prejudice based on principles of comity, leaving only his Eighth Amendment denial of medical care claim.  (*Id.*)  Wilson then filed an amended complaint, asserting identical claims while adding new factual allegations of recent retaliatory conduct by Blue.  (*See* Am. Compl. ¶ 33.)

### III. REHABILITATION ACT AND AMERICANS WITH DISABILITIES ACT CLAIMS

The R&R recommends dismissal of Wilson's RA and ADA claims consistent with this Court's previous opinion.  Wilson does not object to this recommendation.  Upon review of Wilson's amended complaint, this Court finds no new allegations that suffice to state a claim under either the RA or the ADA.  Thus, the Court will adopt the reasoning of the R&R, incorporate its own previous analysis, and dismiss the RA and ADA claims.

### IV. EIGHTH AMENDMENT CLAIMS

Encompassed in the Eighth Amendment's protections against cruel and unusual punishment is a prohibition against prison officials acting with "deliberate indifference" to a prisoner's "serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).  Deliberate indifference may be evidenced by a prison official "intentionally denying or delaying access to medical care."  *Estelle*, 429 at 104-05.

Deliberate indifference claims contain both an objective component and a subjective one. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  The objective component is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person."  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004).  The medical condition need not be visually

3

obvious. *See, e.g.*, *Rouster v. Saginaw Cnty*, 749 F.3d 467, 446-51 (6th Cir. 2014); *Johnson v. Karnes*, 398 F.3d 686, 874. Nor must the medical condition go completely untreated to qualify as an Eighth Amendment violation—a delay in medical treatment may also rise to the level of a constitutional violation. *Napier v. Madison Cnty*, 238 F.3d 739, 742 (6th Cir. 2001). A claim premised on delay has an extra step, however, if the medical need is minor or non-obvious. *Blackmore,* 390 F.3d at 898. The plaintiff "must place verifying evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier*, 238 F.3d at 742.

If the objective component is satisfied, the plaintiff must then demonstrate that the defendant had "a sufficiently culpable state of mind[.]" *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). The minimum culpability of the subjective component lies somewhere between mere negligence and purposeful harm. *See Farmer*, 511 U.S. at 835. A plaintiff "must present evidence from which a trier of fact could conclude that the official was subjectively aware of the risk and disregard[ed] that risk[.]" *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (internal quotations omitted). In other words, Wilson must demonstrate that Blue acted "with deliberateness tantamount to intent to punish." *Miller v. Calhoun Cnty.*, 408 F.3d 808, 813 (6th Cir. 2005).

The Court previously characterized Wilson's Eighth Amendment claim as one of *delay* in medical care, rather than outright denial. (8/10/2022 Op. 5-6.) The R&R recommends granting Blue's motion for summary judgment on this claim. Wilson makes several specific objections to the R&R, roughly grouped into the objective and subjective components of an Eighth Amendment claim with a final objection as to the overall conclusion.

### A. Wilson's Objections to the Objective Component

The R&R focuses primarily on the objective component of Wilson's claim. Because Wilson complains of a delay in medical care, the magistrate judge concluded that he must present evidence of the detrimental effect of that delay. Because "the medical evidence fails to establish

4

that [Wilson] suffered any detrimental effect from the brief delay in treatment he experienced[,]" the R&R recommends granting Blue summary judgment. (R&R 8.) Wilson lodges several objections, attacking both the premise of the legal analysis and various factual findings.

### 1. Objections One and Two—Delay Versus Denial and Evidence of Serious Medical Need

Wilson objects to the magistrate judge's characterization of his Eighth Amendment claim as one of delay rather than denial. In doing so, Wilson argues that this Court's previous analysis reaching the same conclusion was wrong. (Pl.'s Objs. 6 n.15.) Although Wilson cites no new case law nor alleges new facts, the Court will again analyze the appropriate characterization of his claim.

Wilson's claim against Blue centers on her refusal to examine or refer him immediately upon his arrival. There is no material factual dispute here. Wilson alleges in his complaint that Blue "forced him to wait while she call[ed] other inmates to be examined for non-emergency issues." (Am. Compl. ¶ 24.) He corroborates this with supporting affidavits from other prisoners (Langston Aff. ¶ 7, ECF No. 28-1; Kennedy Aff. ¶ 5.) Blue does not dispute this. Instead, she avers, "Upon Wilson's arrival . . . I did not know what Wilson's medical need was and did not observe any behavior from him that indicated to me that he needed immediate care . . . I had other prisoners that had appointments or arrived prior to Wilson that needed to be seen[.]" (Blue Aff. ¶ 7.) She submits a corroborating medical report of her examination of prisoner Ronald Langston, indicating that she was indeed actively seeing other patients before attempting to call Wilson. (*See generally*, Langston Clinical Encounter.) So far, then, both Blue and Wilson agree that Wilson was "forced . . . to wait."

But Blue further avers that "when I went to get Wilson from the waiting room, I discovered Wilson had left healthcare." (Blue Aff. ¶ 7.) Nowhere does Wilson dispute that Blue attempted

5

to call him for his examination. Rather, Wilson acknowledges that he gave up waiting after about thirty-five minutes, left to make some calls to his family members, and then returned only after his fellow inmates "convinced me to get back up and go over there that evening." (Wilson Dep. 42, 47.) When Wilson returned, another nurse examined him and decided to refer him to the Henry Ford hospital where he eventually received further examination for his chest pains.

The undisputed facts clearly indicate that Wilson's medical treatment was delayed, not denied. For one, he eventually received the medical examination he sought. But more to the point, Blue *attempted* to examine Wilson, only to be thwarted by Wilson himself. Wilson apparently felt that thirty-five minutes was too long to wait and left to do other things.

This Court's previous analysis requires one clarification. At first glance, the Sixth Circuit in *Napier* appears to create a clear categorical line between delay cases and denial cases. Subsequent cases have softened this. The Sixth Circuit clarified in *Blackmore* that "*Napier* does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention." *Blackmore*, 390 F.3d at 898. Rather, "*Napier* applies where the plaintiff's 'deliberate indifference' claim is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious." *Id.* It is in these cases where "medical proof is necessary to assess whether the delay caused a serious medical injury." *Id.*

This case is precisely the type of case which *Napier* contemplates. The facts here do not indicate "an obvious need . . . requiring prompt medical attention." Rather, the facts indicate that Wilson, a patient with a noted history of malingering, was experiencing some chest pains which were evidently mild enough to allow him to go about his day and to even consider foregoing treatment. In other words, he was experiencing the sort of minor or non-obvious medical episode

6

for which "medical proof is necessary to assess whether the delay caused a serious medical injury." *Id.*

Wilson's second objection dovetails into this question of obviousness. He objects to the magistrate judge's conclusion that "[t]he evidence which has been submitted indicates that [Wilson] was not suffering a serious medical need[.]" (R&R 6.) Wilson bases this objection on an apparent "policy" that "a report of chest pain virtually always requires urgent evaluation and is a matter that is given high priority by clinic staff." (Grievance Resp., ECF No. 54-6, PageID.389.) Wilson's reliance on the Grievance Response is misplaced. The Grievance Response "acknowledged" the general "policy" but made no conclusion as to whether Blue violated it. Instead, the Grievance Response noted that "[b]y [Wilson's] own admission, he left Health Care of his own accord prior to evaluation" and admonished him to "remain in Health Care" in the future "so that he may be assessed and treated as indicated." (*Id.*)

Wilson's other evidence is equally unavailing. First, the affidavit from Ronald Langston in which Langston avers that his appointment "wasn't an emergency, like Mr. Wilson's chest pains were" offers no new information. (Langston Aff. ¶ 7.) There is no dispute that Blue saw Langston before Wilson and that Wilson indicated he was experiencing chest pains. Langston's characterization of Wilson's chest pains as an emergency is based on Wilson's own explanation of his symptoms, not Langston's own observations.

Second, the fact that Wilson was eventually referred to Henry Ford Hospital upon his return to MDOC healthcare hours later is not evidence that he was suffering from an obvious medical need requiring prompt attention earlier in the day. Rather, this indicates that *once examined* by an MDOC nurse, he was then referred to a hospital for *further* examination. Notably, this examination, too, occurred hours later—hospital records indicate that his examination began

7

about two hours and twenty minutes after he returned to MDOC healthcare. (Henry Ford Report, PageID.297.)

This Court does not dispute that Wilson was experiencing symptoms that required eventual medical attention. Rather, the Court concludes that the evidence indicates Wilson was suffering the sort of minor or non-obvious medical episode which requires *something more* than its mere existence to establish the objective component of a denial of medical care claim. After all, chest pain does not necessarily indicate a serious condition. In this regard, Wilson's own decision to remove himself from MDOC healthcare rather than wait more than thirty-five minutes is illuminating. In other words, Wilson has not put forth evidence from which a reasonable jury could conclude that his report of chest pains indicated an obvious medical need that required prompt attention. *Napier* is the correct analytical framework. The Court overrules Wilson's first and second objections.

## 2. Objection Three—Evidence of the Detrimental Effect of Delay

With his claim properly framed within *Napier*, Wilson "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier*, 238 F.3d at 742. The magistrate judge concluded that he failed to do so. Wilson objects, pointing primarily to his final diagnosis from Henry Ford Hospital of "stroke-like symptom[s]" and "left-sided weakness[.]" (Henry Ford Report, PageID.307.) He argues that had Blue treated him immediately, "he would not have later suffered painful, stroke-like symptoms." (Pl.'s Objs. 8.)

Wilson misrepresents the evidence. The Henry Ford report does indeed indicate a final diagnosis of stroke-like symptoms and left-sided weakness, but also indicates that these were the same symptoms he experienced throughout the day. From the report discussing his intake symptoms:

8

> [Wilson] states that he went to sleep at 4:30 a.m. and he woke up at 5:30 a.m. and he had difficulty walking and moving his left arm.  Patient states he has complete paralysis of his left arm as well as his left leg, however surprisingly he is experiencing left-sided chest pain.  On my exam, patient appears to be in no acute distress.

(Henry Ford Report, PageID.304; *see also id.*, PageID.297.)  In other words, Wilson experienced no significant change in his condition.  His "final diagnosis" was consistent with his initial reported symptoms, for which he appeared to receive no notable treatment.  Wilson left with the same symptoms he arrived with.  Thus, there is no evidence of a detrimental impact of any delay caused by Blue.  The Court overrules Wilson's third objection.

### 3. Objection Four—Finding of Malingering

In the R&R, the magistrate judge referenced the medical notes from Henry Ford Hospital that indicated Dr. Liroff's "high suspicion for malingering[.]"  (R&R 7.)  Wilson objects to the magistrate judge "raising this allegation on Blue's behalf."  But the magistrate judge did not "find" that Wilson was malingering, nor did he suggest that such a finding was "part of the elements of an Eighth Amendment claim[.]"  (Pl.'s Objs. 9.)  Rather, the magistrate judge cited the doctor's conclusion as part of the record evidence tending to show a lack of both an obvious medical emergency and a detrimental effect of any delay.

Whether there was an obvious medical need or whether there was a detrimental effect of any delay are material issues for which Blue has presented evidence.  This evidence includes the doctor's suspicion of malingering.  Wilson must meet the proffered evidence with his own to establish a genuine dispute.  He has not done so.  The Court will overrule Wilson's fourth objection.

### 4. Objection Five—Finding of an "Unremarkable" Medical Report

Wilson's fifth objection is similar to his "malingering" objection.  The R&R notes that "[Wilson] participated in various diagnostic testing . . . the results of which were all

9

unremarkable." (R&R 7.) Wilson objects to this "finding," offering his own interpretation of the report—primarily that his blood pressure reading was, in his estimation, "extraordinarily high." (Pl.'s Objs. 10.) Again, he misunderstands the magistrate judge's analysis.

The magistrate judge did not "find" that Wilson's medical report was unremarkable. Rather, the magistrate judge cited the opinion of Henry Ford Hospital's Dr. Frank Tarn that "patient's workup is unremarkable." (Henry Ford Report, PageID.306.) Again, this evidence is probative of a material issue. The magistrate judge did not err in citing it, nor did he draw any inappropriate or unreasonable inferences therefrom.

Perhaps Wilson is correct that his blood pressure reading was "extraordinarily high." He is certainly correct that his final diagnosis indicated "he has 'Coronary artery disease[,]'" though, notably, he self-reported this condition as part of his "patient history" upon intake. (*Id.*, PageID.297-299, 307.) But Wilson is incorrect to suggest that these aspects of the medical report negate the simple fact that the same report *also* characterizes his examination as unremarkable. The Court will overrule Wilson's fifth objection.

### 5. The Court's Conclusion as to the Objective Component

With Wilson's objections overruled, the Court concludes that Wilson has failed to establish the objective component of his Eighth Amendment deliberate indifference claim. The Court adopts the R&R's reasoning and supplements it with the foregoing analysis. Ultimately, Wilson has failed to put forth sufficient evidence either (1) that his medical need was so obvious and urgent that he needed immediate treatment or (2) that he experienced a detrimental effect of any delay. In contrast, Blue *has* adduced sufficient evidence indicating the absence of both. Even when drawing all reasonable inferences towards Wilson, Blue has carried her burden on summary judgment.

### B. Wilson's Objection to the Subjective Component

Wilson must establish both the objective and subjective components of his deliberate indifference claim. *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018.) Having concluded that Wilson did not establish the objective component, the magistrate judge did not address the subjective component. Because this Court agrees with the magistrate judge's conclusion on the objective component, it need not reach Wilson's subjective component objections.

### C. Wilson's Objection to the R&R's Conclusion

In Wilson's final objection, he reiterates his disagreement with the magistrate judge's characterization of his claim as one of delay rather than denial. As discussed above, this Court rejects Wilson's argument and agrees with the R&R. At bottom, Wilson maintains that he "has presented sufficient factual disagreements to require submission of the case to the jury." (Pl.'s Objs. 15.) For all the reasons stated above, this Court disagrees.

To reiterate, Wilson has presented evidence that he was experiencing chest pains, that he told others that he was experiencing chest pains, and that Blue did not examine him immediately upon his arrival. None of this is in dispute. Additionally, Wilson does not dispute that he left MDOC healthcare after waiting thirty-five minutes, nor does he dispute that he eventually received the examination he sought, nor can he reasonably dispute that that examination resulted in a diagnosis different than the symptoms he complained of. He simply has not presented sufficient evidence to put the objective component of his claim into play. The magistrate judge's conclusion that Blue should be granted summary judgment is correct, and Wilson's final objection will be overruled.

## V. STATE LAW CLAIMS

Because the magistrate judge recommends dismissal of Wilson's federal law claims, he recommends that this Court decline to exercise supplemental jurisdiction over the remaining state

11

law claims under 28 U.S.C. § 1367(c)(3). Such a decision is within this Court's "broad discretion." *Smith v. Erie Cnty. Sheriff's Dep't*, 603 F. App'x 414, 424 (6th Cir. 2015). Indeed, "if federal claims are dismissed before trial . . . the state claims should be dismissed as well." *Taylor v. First of Am. Bank-Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992); *see also Erie Cnty.*, 603 F. App'x at 424.

Wilson makes no objection to this recommendation. This Court finds that the R&R makes a sound recommendation, and as such will decline to exercise jurisdiction over Wilson's state law claims.

## VI. QUALIFIED AND SOVEREIGN IMMUNITY

Blue raises both qualified and sovereign immunity defenses as separate and independent reasons to grant her summary judgment. The magistrate judge did not address these arguments.

To defeat a qualified immunity defense in this context, a plaintiff must establish two points. First, that the defendant has violated the plaintiff's Eighth Amendment rights and, second, that those rights were so "clearly established" that any officer would have recognized the violation. *See Johnson v. Sootsman*, 79 F.4th 608, 615 (6th Cir. 2023) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Courts may resolve these two "in any order," either by first holding the constitutional claim fails on the merits or by holding the defendant's conduct did not violate clearly established law. *Id.* Here, the Court rejects Wilson's Eighth Amendment claim on the merits. It thus agrees that Blue is also entitled to qualified immunity.

Regarding sovereign immunity, Wilson sues Blue in her individual and official capacity. A lawsuit against a state official in their official capacity for monetary damages is treated as a lawsuit against the state. *Brandon v. Holt*, 469 U.S. 464, 471 (1985). States and their departments are immune under the Eleventh Amendment from suit in the federal courts unless the state has waived immunity or Congress has expressly abrogated it. *See Pennhurst State Sch. & Hosp. v.*

*Halderman*, 465 U.S. 89, 98-101 (1984); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Section 1983 did not expressly abrogate Eleventh Amendment immunity, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court, *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).  Thus, to the extent that Wilson sues Blue in her official capacity for monetary damages, Blue is also entitled to sovereign immunity.

## VII. CONCLUSION

Wilson has failed to establish a genuine dispute of material fact as to the objective component of his Eighth Amendment deliberate indifference claim.  Thus, his Eighth Amendment claims will be dismissed along with his RA and ADA claims.  The only remaining claims are grounded in state law, over which this Court will decline to exercise jurisdiction.  As such, the Court will grant Blue's summary judgment motion and terminate the case.

An order will enter consistent with this Opinion.

Dated: December 15, 2023 /s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE